# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ALBERT E. GUCKER, | ) | |
|---|---|---|
| | ) | Civil Action No. 13-583 |
| Plaintiff, | ) | Judge Nora Barry Fischer |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. STEEL CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

I.  INTRODUCTION

This is an age discrimination case wherein Plaintiff Albert E. Gucker ("Gucker" or "Plaintiff") contends that Defendant U.S. Steel Corporation ("U.S. Steel" or "Defendant") unlawfully terminated him on the bases of his age[1] and disability[2] in violation of the Age Discrimination in Employment Act[3] ("ADEA"), the Americans with Disabilities Act[4] ("ADA") and the Pennsylvania Human Relations Act[5] ("PHRA"). (Docket No. 1). Gucker acknowledges that from 2003 until December 28, 2011, his last day of work, he was subject to certain physical limitations and restrictions; however, he maintains that he was terminated that day for unlawful

---

[1] At the time of his termination, Gucker was sixty years old. (Docket No. 55 at 71, ¶ 5).
[2] Gucker suffered from degenerative arthritis in both knees, right ankle, instability and numbness in the right foot due to spinal stenosis, type II diabetes, atrial fibrillation, and sleep apnea. (Docket No. 44 at ¶ 104).
[3] The ADEA provides that it is unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).
[4] Under the ADA, an employer cannot discriminate "against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
[5] The relevant portion of the PHRA states that "[i]t shall be an unlawful discriminatory practice … (a) For any employer because of the … age … or non-job handicap or disability … of any individual or independent contractor, to refuse to hire or employ or to contract with … or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 Pa. Stat. § 955(a).

1

discriminatory reasons, without reason or cause, and based solely on his age, seniority, and/or his disability. (*Id.* at ¶¶ 24, 27, 37).

Defendant's motion for summary judgment has been exhaustively briefed in accordance with Local Rule 56.1, argued to the Court at a motion hearing held on February 25, 2015, (Docket No. 50), and supplemented through additional filings subsequent to the hearing through March 11, 2015, (Docket Nos. 35-38, 43-46, 48-49, 52, 55). After careful consideration of the parties' positions and having evaluated all of the evidence of record in light of the appropriate standard governing motions for summary judgment, and for the following reasons, Defendant's Motion for Summary Judgment, (Docket No. [35]), is DENIED.[6]

II. BACKGROUND

Because the Court writes primarily for the parties, who are familiar with the facts, the Court will not exhaustively discuss same herein. At all relevant times, Gucker was employed by U.S. Steel as a Maintenance Technician (Mechanical) ("MTM") in its Irvin Works Tractor Shop, where he worked for fifteen years performing repairs to mobile equipment. (Docket No. 55 at ¶¶ 7-8). From approximately November 30, 2011 through December 27, 2011, Gucker was on Sickness & Accident leave for a gallbladder surgery. (*Id.* at ¶ 56). He returned to work on December 28, 2011, consistent with his physician's orders. (*Id.* at ¶ 57). On that date, Gucker underwent a return to work exam by Dr. Richard Katz ("Dr. Katz") of the U.S. Steel medical department, who then released him for work with the same 30 pound restriction he had prior to the gallbladder surgery. (Docket No. 44-19 at 2); (Docket No. 55 at ¶¶ 72-73). In fact, Gucker has produced evidence that, from 2008 through 2011, various U.S. Steel physicians examined

---

[6] In his response to Defendant's motion for summary judgment, Plaintiff withdrew his hostile work environment, retaliation, and wrongful termination claims. (Docket No. 43 at 16). Accordingly, the Court dismissed said claims on February 12, 2015. (Docket No. 47).

him and cleared him to work with the same restriction: no lifting over 30 pounds. (Docket No. 49-2 at 2-6).

Dr. Katz then called Ashley Ligman (née Ashby) ("Ligman"), Gucker's direct supervisor in December 2011, to advise her that Gucker would be returning to work said restriction. (Docket No. 55 at ¶¶ 16, 74). Ligman responded that the restriction could be accommodated. (*Id.* at ¶ 74). When Gucker arrived at the Tractor Shop following the return to work examination, he gave Ligman his paperwork before changing into his work clothes and beginning to work. (*Id.* at ¶ 75). With that restriction in place on December 28, 2011, Gucker worked for approximately five hours, without incident. (*Id.* at 72, ¶ 13). As he worked, Ligman left Gucker's paperwork on Don Hubert's ("Hubert") desk, given Hubert's instructions to her to do so. (*Id.* at ¶ 77). Hubert was the area manager in charge of, among other things, the Irvin Works Tractor Shop. (*Id.* at ¶¶ 13, 14).

After he had begun working, Gucker was advised that Hubert wanted to see him in his office. (*Id.* at ¶ 80). Gucker testified that when he went into Hubert's office, Hubert said, "I see you have limitations since 2003," to which Gucker responded, "Yes, I have." (Docket No. 36-5 at 28:15-17, 29:1-3). Hubert responded, "Nobody in my department works with limitations, get the limitations removed from 2003." (*Id.* at 29:3-5).

Hence, Hubert, believing that Gucker's restriction precluded his ability to work in the shop, rejected Gucker's attempt to return to further work that day. (*Id.* at 78, ¶ 51); (Docket No. 36-7 at 135:11-14). Unable to work, Gucker then left the plant without stopping at the medical department.[7] (Docket No. 55 at ¶ 87). Gucker applied for Social Security Disability Insurance benefits the next day. (*Id.* at ¶ 156). The Social Security Administration ("SSA") determined that Gucker was disabled as of December 28, 2011. (*Id.* at ¶ 158).

---

[7] As discussed in the Section IV.1.b, the parties dispute whether Gucker went to the medical department.

In support of his claim, Gucker has also presented the testimony of Brian Buzby ("Buzby"), a laborer and fellow U.S. Steel Tractor Shop employee, about the change in tractor shop policy regarding restrictions when Hubert took charge:

> [Gucker] was in our shop working with the restrictions for a good many years until Hubert came on as the area manager, and then there was all of a sudden no restrictions allowed on no entities. I mentioned about the other individuals [Dan Matese ("Matese") and Timothy Hopes ("Hopes")] that were pushed out basically because they had restrictions.

(Docket No. 36-11 at 7:16-8:2, 56:18-57:2). Based on his testimony, Buzby implied that is that, in addition to disability, age also had a role in the "pushing out" of Matese, who was in his 50s, and Hopes, who was in his 60s. (*Id.* at 58:13-14).

III. STANDARD OF REVIEW

It is well-established that summary judgment is appropriately entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. *See Montone v. City of Jersey City*, 709 F.3d 181 (3d Cir. 2013). Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In evaluating the evidence, the Court must interpret the facts in the light most favorable to Plaintiff and draw all reasonable inferences in his favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

IV. DISCUSSION

1. *McDonnell-Douglas* Framework

4

Discrimination claims brought under the ADA, ADEA, and PHRA are evaluated under the familiar *McDonnell-Douglas* burden-shifting analysis. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Under *McDonnel-Douglas*, Plaintiff has the initial burden to establish a prima facie case of discrimination. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). If Plaintiff establishes a prima facie case, the burden shifts to Defendant "to advance a legitimate, non-discriminatory reason" for its employment decision and, if Defendant is successful, the burden shifts back to Plaintiff to present sufficient evidence from which a reasonable jury could conclude that the employment decision was a pretext for discrimination. *Id.* With that background, the Court addresses Defendant's Motion as to the ADA, ADEA, and PHRA claims, in turn.

1. ADA Claim[8]

    a. Judicial Estoppel

U.S. Steel has moved for summary judgment, arguing that Gucker is estopped from asserting his ADA claim, because his statements to the SSA and statements in support of his ADA claim are irreconcilable. (Docket No. 36 at 3). Plaintiff maintains that he is not estopped from bringing his ADA claim because the SSA does not account for reasonable accommodation. (Docket No. 43 at 3). For this reason and others set forth below, the Court agrees.

As the United States Court of Appeals for the Third Circuit has explained, "[t]o establish a prima facie case of discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) has suffered an adverse employment action as a result

---

[8] As the PHRA's definition of "handicap or disability" is substantially similar to the ADA's definition of "disability," the Court's treatment of Plaintiff's ADA claims properly applies to his PHRA claims. *See Schmidt v. Mercy Hosp. of Pittsburgh*, 2007 WL 2683826, at *2 (W.D. Pa. Sept. 7, 2007) (citing *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996).

5

of discrimination." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009). As the Supreme Court of the United States observed, "[t]he Social Security Disability Insurance (SSDI) program provides benefits to a person with a disability so severe that she is 'unable to do [her] previous work' and 'cannot ... engage in any other kind of substantial gainful work which exists in the national economy.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999) (quoting 42 U.S.C. § 423(d)(2)(A)) (brackets and ellipsis in original).

Given those standards, there is clear tension between a plaintiff's pursuit of SSDI and his establishment of a second element of a prima facie case under the ADA. However, the statutes differ in this crucial respect: while the ADA considers whether a plaintiff can perform his job with reasonable accommodations, the SSA does not take such accommodations into account in determining eligibility for SSDI. *Id.* at 803; *see also Cavaliere v. Advertising Specialty Inst., Inc.*, 853 F.Supp.2d 472, 480-81 (E.D. Pa. 2012). As a result, the Supreme Court has concluded that the "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." *Cleveland*, 526 U.S. at 797. But, "an ADA plaintiff cannot simply ignore [his] SSDI contention that [ ]he was too disabled to work. To survive a defendant's motion for summary judgment, [ ]he must explain why that SSDI contention is consistent with h[is] ADA claim," *id.* at 798—that is, his "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" *Id.* at 807. In light of same, the Third Circuit has cautioned that a court may not rely on statements made in a SSDI application to *per se* bar apparently contradictory claims made later, in the course of the applicant's ADA suit, and that any such discrepancies must be analyzed giving due consideration to the particular factual

6

context. *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272–73 (3d Cir. 2012); *Motley v. New Jersey State Police*, 196 F.3d 160, 166 (3d Cir. 1999).

In support of its argument that Plaintiff is estopped from asserting his ADA claim, Defendant relies on the Third Circuit's reasoning in *Motley v. New Jersey State Police*. 196 F.3d 160. In *Motley*, the plaintiff claimed in his application for disability benefits that he was "permanently and totally disabled" and failed to offer a reasonable explanation to explain away the inconsistency. 196 F.3d at 166. That is not the case here. In his SSDI application, Plaintiff responded to the question "Why did you stop working?" by stating "Because of my condition(s); Because of other reasons." (Docket No. 55 at 65). He further explained that "age, contract agreements, and more physical restrictions from other doctors since 2003 and before 2003" caused him to stop working. (*Id.*). Gucker never stated that he was unable to perform his job. In fact, in his Social Security application in response to the SSA's question "What were you able to do before your illnesses, injuries, or conditions that you can't do now?" he responded: "Employer would not accept physical restriction placed by physician." (*Id.* at 63).

Moreover, on December 28, 2011, the date he was returning to work following gallbladder surgery and the date he was effectively terminated, he indicated that he did not have a medical condition or take medication that would affect his ability to perform any aspects of his job. (Docket No. 44-4). On that date, he even worked for five hours without incident, once Dr. Katz released him for work with the same 30 pound restriction he had prior to the gallbladder surgery. (Docket No. 44-19 at 2); (Docket No. 55 at ¶ 72-73). Gucker has presented his testimony that the only accommodation he needed was "[j]ust what I normally had all along." (Docket No. 36-5 at 58:22-24). To that end, there is ample evidence in the record that Gucker performed the duties of his job with the 30 pound restriction for years without consequence.

7

(*See, e.g.*, Docket No. 55 at ¶ 78).

The Court further recognizes that the SSA's finding that Gucker was "disabled" was not a determination made solely based on his physical capacity to perform the functions of his prior position, with or without an accommodation. (*See* Docket No. 36-20 at 9 (noting that the rule used to determine that Gucker was disabled was Rule 201.06 which considers Gucker's advanced age, high school education, and semi-skilled work skills that were not transferrable)). Instead, the SSA system considers a host of other factors, including the claimant's age and other aspects of his vocational profile, all of which are compared to the Medical-Vocational Guidelines to determine if a finding of "disabled" is appropriate. *See* 20 C.F.R. Pt. 404, Sub.Pt. P, Appx 2; *Hitchcock v. Comm. of Soc. Sec. Ad.*, 2009 WL 5178806, at *9-10 (W.D. Pa. Dec. 21, 2009). Indeed, the SSA disability system recognizes that "age significantly affects a person's ability to adjust to other work" and employs "special rules" for persons approaching retirement age due to potential difficulty in transferring jobs. 20 C.F.R. § 404.1563(e); § 1568(d)(4). In many situations, a Social Security claimant's age is the sole determining factor of whether he is disabled or not. *See e.g., Schettino v. Comm. of Soc. Sec.*, 295 F. App'x 543, n.5 (3d Cir. 2008) (noting that the ALJ's disability decision was not based on a finding that the plaintiff's condition had deteriorated but resulted from the plaintiff having turned 50 in the category of "closely approaching advanced age," placing him in a classification on the grids that rendered him disabled).

Based on this Court's experience handling Social Security appeals, this appears to be one of those situations. Gucker was 60 years old at the time of his application; hence, he was considered a "person of advanced age" under the relevant regulations given that he was over the age of 55. *See* 20 C.F.R. § 404.1563. Due to Gucker's age and vocational profile, and the fact
8

that he was restricted to performing sedentary work, Rule 201.06 of the Guidelines directed that he be rendered disabled. (*See* Docket No. 36-20, Def. Ex. S at 9 (finding "201.06 – Adv. Age HS No Dir Ent Skilled-Semi No Trans")). Additionally, because of his age, Rule 202.06 of the Guidelines directs that he would have been "disabled" for Social Security purposes even if he was deemed to be capable of "light work."[9]

Given the above and construing the record in the light most favorable to Plaintiff, as this Court must, the Court finds that Plaintiff has presented sufficient evidence to explain why the statements in his SSDI application are consistent with his ADA claim that he could "perform the essential functions" of his previous job, at least with "reasonable accommodation." *Cleveland*, 526 U.S. at 798. Thus, judicial estoppel does not bar Plaintiff's ADA claim.

### b. Prima Facie ADA Case

Having found that Gucker's ADA claim is not judicially estopped, the Court now turns to the merits of the ADA claim. The parties do not dispute whether Gucker was disabled or whether he had the requisite skill, experience, education and other job-related requirements of the MTM position in the tractor shop. (Docket No. 36 at 7). Instead, Defendant argues that Gucker has not established that he is a qualified individual under the ADA, because he cannot show that he was capable of performing his essential job functions. (*Id.*). In support of this argument, Defendant relies on the Functional Capacity Examination ("FCE") performed by Dr. Mark Kerestan ("Dr. Kerestan"), now deceased. Despite Defendant's arguments, the Court agrees with Plaintiff and finds that Defendant has not met its burden to establish that there is no genuine dispute of material fact as to this claim.

As an initial matter, this FCE was performed on January 18, 2012, three weeks after

---

[9] In contrast and interesting to note, given Plaintiffs' age discrimination claim, younger individuals (under the age of 50) with a similar vocational profile and only capable of performing light or sedentary work are not deemed disabled under those Guidelines. Rules 201.21; 202.21.

9

Gucker was told to leave the Tractor Shop and did not assess whether Gucker could perform his job duties with reasonable accommodation. (Docket No. 36-12 at 2); (Docket No. 36-24 at 36:8-11); (Docket No. 44 at ¶ 104).

Additionally, while U.S. Steel contends that on December 28, 2011, Gucker returned to the medical department for a fitness for duty examination by Dr. Paul Vaughan ("Dr. Vaughan"), (Docket No. 36-10 at 25:3-26:21), Gucker denies that any such examination occurred, (Docket No. 36-5 at 29:19-30:12). The Court points out that Defendant has not presented any contemporaneous notes of Dr. Vaughan's alleged examination. (Docket No. 36-22 at 6). The record instead contains a March 12, 2012 log entry by Dr. Vaughan describing the alleged January 1[8], 2012 FCE. (*Id.*). As this Court must construe the record in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find that Plaintiff was a qualified individual under the ADA and thus able to perform the essential functions of his job.

U.S. Steel next claims that Gucker cannot show that he was denied a reasonable accommodation, because there were no vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position. (Docket No. 36 at 8). In support of its argument, U.S. Steel maintains that it "addressed whether Gucker could reasonably be accommodated for the MTM position in the tractor shop." (Docket No. 36 at 8). Notwithstanding same, the Court must reject its position at this stage.

The record demonstrates that the results of the FCE, which did not account for reasonable accommodation, were sent to Dr. Vaughan. (Docket No. 55 at ¶ 109). Dr. Vaughan's notes demonstrate that he contacted Hubert to see if Gucker's ordinary restrictions could be accommodated in the Tractor Shop. (*Id.* at ¶ 110). Hubert advised him that they could not be,

(*id.*), and Krista Marcin ("Marcin"), the Department Manager of Labor Relations & Employment, indicated that there were no open sedentary or "office" jobs. (*Id.* at ¶¶ 112-13). Even so, the Court reiterates that, for years, Plaintiff was able to perform the essential functions of his job as an MTM in the Tractor Shop with reasonable accommodation. (*See, e.g.*, Docket No. 55 at ¶ 78). As such, U.S. Steel's argument here fails for the same reason as its argument that he was not a qualified individual—the record, construed in the light most favorable to Plaintiff, clearly demonstrates that he was capable of performing the essential job functions of his prior position with reasonable accommodation.

U.S. Steel offers no particularized argument that Gucker did not suffer an adverse employment action with respect to his ADA claim. The record demonstrates that on his retirement paperwork, completed March 20, 2012, Gucker stated "I elect to retire effective March 31, 2012," and that he made such election voluntarily. (Docket No. 55 at ¶ 123). But, Gucker testified that he was forced to retire. (Docket No. 36-5 at 22:21). Additionally, he presented the testimony of Lauren Coulter (née Beauseigneur) ("Coulter"), who was at the relevant time a labor relations representative employed by U.S. Steel. (Docket No. 55 at ¶ 99). Coulter testified, "I don't think [Gucker] really had a choice," and that "we weren't making that accommodation for him. So it was basically either retire or—he could maybe get his pension at that point, because he didn't have any money. He was stuck." (Docket No. 55 at ¶ 127); (Docket No. 44-2 at 82:2, 82:5-8).

Given the lack of formal argument by U.S. Steel and the evidence presented by Gucker as to this element, the Court finds that a reasonable jury could conclude that Gucker suffered an adverse employment action when Hubert refused to permit him to work with his accommodation. "A retirement or resignation is said to be an 'adverse employment action' when it amounts to a

'constructive discharge.'" *Thomas v. City of Phila.*, 2013 WL 5429230, at *5 (E.D. Pa. Sept. 30, 2013) *aff'd*, 573 F. App'x 193 (3d Cir. 2014) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 106, 1075 (3d Cir. 1996) ("[A] plaintiff who voluntarily resigned may maintain a case of constructive discharge when the employer's allegedly discriminatory conduct creates an atmosphere that is the constructive equivalent of a discharge.")); *see also Sempier v. Johnson & Higgins*, 45 F.3d 724, 732 (3d Cir. 1995) ("It is impermissible to force older employees to choose between retirement or termination in an effort to eliminate older workers on account of their age.").

Here, U.S. Steel both challenges Gucker's prima facie case and further contends that Gucker has failed to adduce any evidence of pretext which would undermine its alleged legitimate non-discriminatory reason for its decision to terminate him for performance reasons. (Docket No. 27). In response, Gucker maintains that he has presented sufficient evidence to raise genuine disputes of material fact which preclude summary judgment in this case. (Docket No. 31). The Court agrees.

"[T]o show that discrimination was the likely cause of the adverse action, a plaintiff can show, for example, that the defendant had previously subjected the same plaintiff to 'unlawful discriminatory treatment,' that it had 'treated other, similarly situated persons not of his protected class more favorably,' or that it had 'discriminated against other members of his protected class or other protected categories of persons.'" *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 277 (3d Cir. 2010) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994)). To that end, Gucker has presented evidence, including Buzby's testimony, that older employees with restrictions were pushed out because of their age and conditions. (Docket No.36-11 at 7:16-8:2, 56:18-57:2, 58:13-14). Gucker also testified that Hubert "leans harder on the

knowledged [sic] people, the older people." (Docket No. 44 at ¶ 90).

For the above reasons and, once again, in construing the record in the light most favorable to Plaintiff, the Court denies Defendant's motion as to the ADA claim. As the Court agrees with Plaintiff that this case is not amenable to summary judgment given the genuine disputes of material facts exist which must be resolved by a jury, and, as Defendant has not challenged the evidence of pretext as to this specific claim, the Court does not proceed to conduct a full *McDonnell-Douglas* analysis.

2. ADEA Claim[10]

Relative to Gucker's ADEA claim, U.S. Steel asserts that Gucker has not offered any evidence that he was a qualified individual or that he suffered an adverse employment action. (Docket No. 36 at 12). Because Gucker has presented no direct evidence that U.S. Steel discriminated against him based on his age, his claims under the ADEA and PHRA are also evaluated under the *McDonnell–Douglas* framework. 411 U.S. 792. Under *McDonnell–Douglas*, Gucker has the initial burden to establish a prima facie case of age discrimination. *See Burton*, 707 F.3d at 425–26. To establish a prima facie case of age discrimination, a plaintiff must first show that: (1) he is forty years of age or older; (2) the defendant took an adverse employment action against the plaintiff; (3) he was qualified for the position in question; and (4) he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir .2009) (citing *Potence v. Hazelton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

At the outset, U.S. Steel concedes that Gucker clearly is forty years of age or older,

---

[10] "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." *Kautz v. Met-Pro Corp.,* 412 F.3d 463, 466 n. 1 (3d Cir.2005).

(Docket No. 7 at ¶ 33), was qualified for the position in question, (Docket No. 36 at 7), and was replaced by a younger employee, George Dean, (Docket No. 46 at ¶¶ 47-48). Accordingly, the only remaining issue as to whether Gucker has met his burden to support an inference of discriminatory animus is whether U.S. Steel took an adverse action. As the Court already found with respect to his ADA claim, a clear dispute exists in the record as to whether Gucker was forced to retire and/or able to work with reasonable accommodation. (Docket No. 46 at ¶ 60).

Thus, at this stage, Gucker has presented sufficient evidence to support a prima facie case and the burden of production shifts to U.S. Steel "to offer a legitimate, nondiscriminatory reason" for its employment decisions. If U.S. Steel meets this "relatively light" burden, the burden then shifts back to Gucker to present sufficient evidence from which a reasonable jury could conclude that the employment decision was a pretext for discrimination. *Landmesser v. Hazleton Area Sch. Dist.*, 574 F. App'x 188, 189 (3d Cir. 2014). Despite the burden-shifting process, Gucker always retains the burden of persuasion to prove by a preponderance of the evidence that such action was a pretext for discrimination. *Urbanic v. Donahoe*, 2013 WL 1149914, at *7 (W.D. Pa. Mar. 19, 2013).

U.S. Steel did not formally articulate its legitimate non-discriminatory reason as to this claim in its motion, (Docket No. 35), brief in support, (Docket No. 36), reply, (Docket No. 45), or supplemental reply, (Docket No. 54); yet, U.S. Steel argues that Gucker has not established pretext, (*Id.* at 9). As already demonstrated with respect to Gucker's ADA claim, there are genuine disputes as to whether Gucker retired or whether U.S. Steel's discriminatory motive with regard to his age and/or disability caused him to be constructively discharged. Once more, the Court points to the testimony of Gucker, (Docket No. 36-5 at 22:21), Buzby, (Docket No. 36-11 at 7:16-8:2, 56:18-57:2, 58:13-14), and Coulter, (Docket No. 44 at ¶ 127); (Docket No. 44-2

at 82:2, 82:5-8). In light of this finding and given the summary judgment standard, the Court denies Defendant's motion as to the ADEA claim.

IV. CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment, (Docket No. [35]), is DENIED. An appropriate Order follows.

<u>s/ Nora Barry Fischer</u>
Nora Barry Fischer
United States District Judge

Dated: June 12, 2015

cc/ecf: All counsel of record.